UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL J. DESSERAULT, an individual, HOGUE RANCHES, INC., a Washington corporation; and DESSERAULT RANCH, INC., a Washington corporation, | NO.  CV-09-3055-FVS |
| | ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS |
| Plaintiffs, | |
| v. | |
| YAKIMA CHIEF PROPERTY HOLDINGS, LLC, formerly known as Yakima Chief U.S., LLC, a Washington limited liability company; et al., | |
| Defendants. | |

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Dismiss Counterclaims.  (Ct. Rec. 27).  Plaintiffs are represented by Randall R. Steichen and William L. Weigand, III.  Defendants/Counter-claimants are represented by Carter L. Fjeld, Kevan T. Montoya, and Tyler M. Hinckley.

**BACKGROUND**

Counter-claimants claim that Plaintiffs Hogue and Desserault are liable for breach of a joint venture agreement and breach of fiduciary duties for failing to sell hops to YCI in 2007 and 2008.  (Ct. Rec. 12 at 19).  Counter-claimants contend that they supplied the hops that Hogue and Desserault should have provided and, because of that, they lost the opportunity to sell those hops in the market, resulting in damages in the amount of approximately $6,600,000.  *Id.*

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 1

**DISCUSSION**

**I.  Standard of Review**

A counterclaim should not be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) unless it "appears beyond doubt that the [counter-claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).  The Court must "accept as true all facts alleged in the [counterclaim]" and "draw all reasonable inferences in favor of the [counter-claimant]." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  The Court must give the counter-claimant the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

As a general rule, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion". *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Rule 12(b)(6) provides that "when matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b)(6) (emphasis added).  However, there are exceptions to the requirement that consideration of extrinsic evidence converts a Rule 12(b)(6)

///

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 2

motion to a motion for summary judgment. *Lee*, 250 F.3d at 688. The Court "may consider material which is properly submitted as part of the [counterclaim] on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id.* If the documents are not physically attached to a counter-claimant's pleadings, they may still be considered if the documents' authenticity is not contested and the counter-claimant necessarily relies on them. *Id.* at 689 (citations omitted).[1]

To survive a motion to dismiss, the counterclaim must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). A claim has "facial plausibility" when a party pleads factual content that allows the court to draw the reasonable inference that the other party is liable for the misconduct alleged. *Id.* The "plausibility" standard asks for more than a sheer possibility that a party has acted as alleged. *Id.*

## II. Breach of Joint Venture Claim

### A. Joint Venture Agreement

Plaintiffs first argue that Counter-claimants have failed to state an actionable breach of a joint venture claim. (Ct. Rec. 29 at 9-13). Counter-claimants allege that Plaintiffs breached a joint venture agreement when they stopped selling hops to YCI after 2006.

---

[1]As this Court determined by separate order, the declaration of Randall R. Steichen and the exhibits attached thereto (Ct. Rec. 34) shall be considered by the Court in its review of the instant Rule 12(b)(6) motion. (Ct. Rec. 46).

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 3

(Ct. Rec. 29 at 9).  Counter-claimants assert that they have sufficiently pleaded a claim for breach of a joint venture agreement. (Ct. Rec. 38 at 5-9).

A joint venture is a type of partnership whose purpose is limited to a particular transaction or project.  *Pietz v. Indermuehle*, 89 Wash.App. 503, 510 (1998) (partnership law applies to joint ventures). Under Washington law, a joint venture requires (1) an express or implied contract (2) for a common purpose; (3) a community of interest; and (4) an equal right to voice and control of the enterprise.  *Douglass v. Stanger*, 101 Wash.App. 243, 249 (2000).

As to the first element, an express or implied contract, Counter-claimants have alleged that Plaintiffs, as guarantors of the Group Supply Agreement, engaged in either an express or an implied contract to provide their pro rata share of the hop products that YCI was required to provide to Heineken.  (Ct. Rec. 12 at 18).  Plaintiffs assert that Defendants are not able to point to a contract, express or implied.  (Ct. Rec. 29 & 42).  Plaintiffs argue that the Group Supply Agreement was between YCI and Heineken, and the Guarantee was entered into between Heineken and the various growers in their independent capacities; therefore, nothing in these documents bind the growers to each other as partners or joint venturers.  (Ct. Rec. 29 at 10-11). Plaintiffs further contend that a guarantee of the debts of an entity does not create a joint venture among the guarantors.  *See Rohda v. Boen*, 45 Wash.2d 553, 557-560 (1954) (a guarantee is not sufficient to create the community of interest in profits necessary for the creation of a joint venture).

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 4

At this early stage in the litigation process, it is clear that there is a material dispute regarding the existence of an express or implied contract.  While Plaintiffs may ultimately be found correct, Counter-claimants' allegations survive a motion to dismiss under general pleading standards.  *See Iqbal*, 129 S.Ct. at 1949.  Drawing all reasonable inferences in favor of Counter-claimants, the joint venture claim is allowed to go forward at this juncture.

As to the second element, common purpose, Counter-claimants allege the guarantee was common to all guarantors and required that the guarantors provide quantities of hops if any of the others failed to provided their required share.  (Ct. Rec. 12 at 18).  The joint venture's purpose was to grow and pool hops to provide YCI with all of the hops that Heineken required under the Group Supply Agreement.  *Id*. Counter-claimants have sufficiently pleaded a common purpose of the joint venture.

As to the third element, a community of interest, Counter-claimants allege that the guarantors had a community of interest in the Heineken Group Supply Agreement.  (Ct. Rec. 12 at 18). "Community of interest," as applied to a joint venture, "means . . . a mixture or identity of interest in a venture in which each and all are reciprocally concerned and from which each and all derive a material benefit and sustain a mutual responsibility."  *Carboneau v. Peterson*, 1 Wash.2d 347, 375-376 (1939).

It can be inferred from the facts presented in the counterclaim that each guarantor was concerned with ensuring that sufficient hops were delivered to YCI to fulfill the Heineken contract.  Each

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 5

guarantor had a mutual responsibility to provide their pro rata share of the hops. Counter-claimants have sufficiently pleaded a community of interest in the joint venture.

Counter-claimants also adequately allege facts supporting the final element, an equal right to voice and control of the enterprise. (Ct. Rec. 12 at 17-18). One has an equal right to a voice in the joint venture when he has an equal right in management and conduct of the undertaking, and when the members equally govern on the subject of how, when, and where the agreement is to be performed. *Carboneau*, 1 Wash.2d at 376. The counterclaim alleges that each Counter-claimant and Plaintiffs entered into the guarantee to deliver and pool their pro rata share of hops to satisfy YCI's obligation under the Heineken contract. Each guarantor had an obligation to perform and an obligation to cover the other guarantors' delivery volume deficiencies, if any. (Ct. Rec. 12 at 17-18).

Based on the foregoing, the Court finds that Counter-claimants have adequately alleged the existence of a joint venture agreement in this case.

**B. Dissolution of Joint Venture**

Plaintiffs contend that even if Counter-claimants could establish a joint venture agreement, it would have dissolved when Hogue and Desserault provided notice that they were ceasing hop-growing operations and would no longer provide hops to YCI. (Ct. Rec. 29 at 11-12). Plaintiffs claim that any duties and obligations owed to the other joint venturers terminated by operation of law upon dissolution of the joint venture at the end of the 2006 crop year. *Id*. However,

given the allegations by Counter-claimants that an agreement continued after 2006, and drawing all reasonable inferences in favor of Counter-claimants, the Court finds that dismissal on this basis is not appropriate at this time.

### C. Statute of Frauds

Plaintiffs assert that Counter-claimant's joint venture claim is additionally barred by the applicable statute of frauds. (Ct. Rec. 29 at 13-14). Plaintiffs argue that because the alleged joint venture agreement is a contract that cannot be performed in one year,[2] Wash. Rev. Code § 19.36.010 renders the unwritten agreement void. Plaintiffs also argue that because the alleged joint venture agreement is a contract for the sale of goods for a price of $500.00 or more, Washington's Uniform Commercial Code invalidates such an unwritten agreement. Wash. Rev. Code § 62A.2-201(1). Plaintiffs contend that Counter-claimants have not alleged the existence of any writing(s) that would satisfy the requirements of the applicable statue of frauds. (Ct. Rec. 42 at 9-10).

Counter-claimants respond that dismissal on a 12(b)(6) motion on statute of frauds grounds is inappropriate where the party claiming the breach has alleged the existence of a contract and may be able to produce writings that satisfy the statute of frauds or obtain testimony from the moving party that suggests that a contract was formed. *Powers v. Hastings*, 20 Wash.App. 837, 841 (1978). Counter-

---

[2]The Group Supply Agreement created a four year rolling obligation that was automatically extended unless terminated by either party.

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 7

claimants also assert that the joint venture was an agreement to collectively transact business with a third party, not a contract for the sale of goods to each other; therefore, it does not fall under the statute of frauds. (Ct. Rec. 38 at 13-14). Counter-claimants further assert that the joint venture agreement here did not by its terms require performance that could not be completed within one year. Therefore, the agreement is not within the statute of frauds. Lastly, Counter-claimants contend that Plaintiffs "partially performed" under the joint venture agreement until 2006; thus, they cannot now contend that the statute of frauds renders the joint venture agreement unenforceable.[3]

The allegations of an express or implied contract in the counterclaim, taken as true, suggest that Counter-claimants may be able to produce writings which could satisfy the statute of frauds. Accordingly, the Court finds that Plaintiffs' motion to dismiss based on the statute of frauds is denied at this time.

Counter-claimants have adequately alleged a cause of action for breach of a joint venture. Consequently, Plaintiffs' motion to dismiss is denied with respect to this claim.

**III.  Breach of Fiduciary Duties Claim**

Plaintiffs maintain that because no joint venture agreement exists, Counter-claimant's breach of fiduciary duties claim must be

---

[3]When a party asserting that an agreement violates the statute of frauds has performed under that agreement, that party is estopped from alleging that the agreement violates the statute of frauds. *Becker v. Lagerquist Bros., Inc.*, 55 Wash.2d 425, 434 (1960); *see also Miller v. McCamish*, 78 Wash.2d 821, 829 (1971) (partial performance may exempt agreement from statute of frauds).

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS - 8

dismissed.  (Ct. Rec. 29 at 15-17).  Plaintiffs contend that even if a joint venture agreement is established, any fiduciary duties owed would have terminated when Plaintiffs ceased hop growing operations and withdrew from the joint venture.  *Id.* at 16.  Plaintiffs lastly argue that "the nominal conclusory allegations that have been pled are not sufficient to state a claim upon which relief can be granted." *See S. Atl. Ltd. P'ship of Tenn. L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002) (even when parties to arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party dominates the other); (Ct. Rec. 42 at 11).

    As concluded above, the Court at this juncture is not able to hold that no joint venture agreement exists in this case.  Counter-claimants have adequately alleged a cause of action for breach of a joint venture.  *Supra.*  Also as determined above, given the allegations by Counter-claimants that an agreement continued after 2006, and drawing all reasonable inferences in favor of Counter-claimants, dismissal on the basis that Plaintiffs withdrew from the joint venture is not appropriate at this time.  *Supra.*

    Counter-claimants allege that Plaintiffs "breached their fiduciary duty of good faith, fairness, candid disclosure and honesty."  (Ct. Rec. 12 at 21).  Counter-claimants explain that Plaintiffs' failure to provide the hops that they agreed to deliver left the remaining joint venturers in a position in which they had to provide a greater share of hops to YCI to fulfill their obligations under the Heineken contract.  *Id.*  Counter-claimants' allegations, taken as true, sufficiently plead a claim for breach of fiduciary

1 | duties.   Therefore, the Court denies Plaintiffs' motion to dismiss
2 | this cause of action as well.
3 | **CONCLUSION**
4 | Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs'
5 | Motion to Dismiss Counterclaims (**Ct. Rec. 27**) is **DENIED.**
6 | **IT IS SO ORDERED.**  The District Court Executive is hereby
7 | directed to enter this order and furnish copies to counsel.
8 | **DATED** this  _20th_  day of January, 2010.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS – 10