1

2

3

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MICHAEL J. DESSERAULT, an
individual; HOGUE RANCHES, INC.,
a Washington corporation; and
DESSERAULT RANCH, INC., a
Washington corporation,

                    Plaintiffs,

        v.

YAKIMA CHIEF PROPERTY
HOLDINGS, LLC, formerly known as
Yakima Chief U.S., LLC, a Washington
limited liability company, et.al.,

                    Defendants.

NO:  CV- 09-3055-RMP

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Securities

Fraud Claims and Pendent Claims (Ct. Rec. 43) for lack of jurisdiction.  The Court

has reviewed Defendants' Motion, Plaintiffs' Response (Ct. Rec. 47), Defendants'

Reply (Ct. Rec. 50), and Plaintiffs' Sur-reply (Ct. Rec 69).

        There are twenty-seven parties in this action.  Plaintiffs are Michael

Desserault, an individual, Desserault Ranch (collectively "Desserault"), and Hogue

ORDER GRANTING MOTION TO DISMISS ~ 1

Ranches ("Hogue"). Plaintiffs filed a Complaint against twenty-four named Defendants ("Defendants") including individuals and corporations connected with hops growing and processing (Ct. Rec. 1).

Among other claims, Plaintiffs allege that Defendants violated the Securities Exchange Act of 1934, including 15 U.S.C. §§ 78j(b) & 78t(a) ("Section 10(b) claim") and17 C.F.R. §240.10b-5 ("Rule 10b-5 claim"), on which Plaintiffs rely for federal subject matter jurisdiction, pursuant to 28 U.S.C. §1331 (Ct. Rec. 1).[1] Defendants' Motion to Dismiss contends that Plaintiffs have failed to state a claim for which relief can be granted under the Securities Exchange Act of 1934, and therefore this Court should dismiss for lack of subject matter jurisdiction.

## Background

Plaintiffs allege that they were members of Yakima Chief U.S., L.L.C. ("Old Yakima Chief") and that Old Yakima Chief was initially formed both by non-hops growers with hops industry experience and hops growers (Ct. Rec. 1 at 9). Plaintiff Desserault has an 11.36% interest in Old Yakima Chief, and Plaintiff

---

[1]The federal law claims at issue are under Section 10(b) and Rule 10b-5 (Ct. Rec. 47 at 2). Additional claims not at issue in this motion include state law claims for breach of contract, breach of fiduciary duty, two accounting claims, and a claim for a mandatory injunction.

ORDER GRANTING MOTION TO DISMISS ~ 2

Hogue has a 6.675% interest (Ct. Rec. 1 at 11). Old Yakima Chief developed facilities to store and process hops and market hops to beer brewers (Ct. Rec. 9 at 12). Plaintiffs allege that growing hops or being affiliated with hops growers was not a condition of membership in Old Yakima Chief (Ct. Rec. 1 at 11). On July 21, 1997, Old Yakima Chief formed Yakima Chief, Inc. to function as its wholly owned operating subsidiary (Ct. Rec. 1 at 12). Old Yakima Chief owned all of the stock of Yakima Chief, Inc. (*Id.*) Yakima Chief, Inc. has three principle lines of business: (1) hops processing; (2) hops brokerage; and (3) research, development, and manufacturing. (*Id.*)

Old Yakima Chief's Operating Agreement provides that it is a member-managed limited liability company in which decisions are made by consensus whenever possible, but decisions "shall be determined by member weighted voting" in cases in which an impasse occurs (Ct. Rec. 1 at 16). Under the Operating Agreement, a member may be expelled from Old Yakima Chief on a determination by the other members that the member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of Old Yakima Chief, or has otherwise breached a duty owed to Old Yakima Chief or to the other members. (Ct. Rec. 1 at 17). An expelled member becomes an economic interest owner who is not entitled to vote, attend member meetings, or participate in Old Yakima Chief affairs (Ct. Rec. 1 at

ORDER GRANTING MOTION TO DISMISS ~ 3

18).  Furthermore, an "Economic Interest Owner is entitled to receive only such distribution or distributions to which the economic interest owner is entitled under this Agreement and when said distributions are made to the Members generally" (Ct. Rec. 1 at 18).

Banks  required members of Old Yakima Chief to personally guarantee certain loans for Old Yakima Chief and Yakima Chief, Inc. (Ct. Rec. 1 at 13).  However, nothing in the operating agreement required members to personally guarantee bank loans. (*Id.*)  Nevertheless in 1998 and 2001, some members, including Plaintiffs, personally guaranteed several million dollars of loans borrowed by Old Yakima Chief (Ct. Rec. 1 at 14).

In 2006, both Hogue and Desserault delivered their last shipments of hops to Old Yakima Chief (Ct. Rec. 1 at 23).[2]  Also in 2006, Plaintiffs were asked to increase their existing guarantees of certain Old Yakima Chief loans (Ct. Rec. 1 at 21).  Plaintiffs refused. (*Id.*)  In March of 2007, Desserault sold its hops operations to a grower who was not an Old Yakima Chief member (Ct. Rec. 1 at 22).  The purchaser refused to deliver hops to Old Yakima Chief (Ct. Rec. 1 at 22).

2 In 2004, Hogue provided two years advanced notice to Old Yakima Chief that it would be phasing out its hop growing operations.  Desserault does not allege that they gave any advanced notice that they would cease hops growing operations (Ct. Rec. 1).

ORDER GRANTING MOTION TO DISMISS ~ 4

Plaintiffs allege that a number of Defendants that Plaintiffs refer to as "the Control Group" were displeased with Plaintiffs for leaving the hops growing business and failing to guarantee additional bank loans (Ct. Rec. 1 at 23).[3] Without prior notification to either Desserault or Hogue, Plaintiffs' membership status was converted involuntarily into the status of economic interest owners (Ct. Rec. 1 at 25-26). Desserault did not receive notice of this status change for approximately fifteen months, and Hogue did not receive notice for approximately three months after the change occurred (Ct. Rec. 1 at 26).

The proffered reason for changing Desserault's status to an economic interest owner was Desserault's refusal to deliver hops and personally guarantee bank loans (Ct. Rec. 1 at 26). There is no stated explanation for Hogue's change in status (Ct. Rec. 1 at 25). Plaintiffs were not given an opportunity to participate in the decision-making process that resulted in their status change (Ct. Rec. 1 at 25).

During this same period, Plaintiffs allege that the Control Group persuaded other members of Old Yakima Chief to restructure Old Yakima Chief into a new entity, New Yakima Chief, Inc., that required members to be hops growers or affiliates of hops growers, which meant that both Desserault and Hogue would be

---

[3]Plaintiffs identify members in the Control Group, but do not explain why those members are included (Ct. Rec. 1 at 23).

ORDER GRANTING MOTION TO DISMISS ~ 5

excluded (Ct. Rec.1 at 28).  Additionally, the restructuring plan called for:  (1) New Yakima Chief to purchase the Yakima Chief, Inc. stock from Old Yakima Chief for $3,500,000; (2) New Yakima Chief to lease all of the real and personal property of Old Yakima Chief for $1,200,000 per year; and (3) Old Yakima Chief to make a $6,000,000 unsecured loan to Yakima Chief, Inc. (Ct. Rec. 1 at 28).

At this time, certain members of Old Yakima Chief offered to buy Plaintiffs' interests at a rate that Plaintiffs claim is below its true value (Ct. Rec. 1 at 29).  In July 21, 2008, Old Yakima Chief held a members meeting and passed a number of resolutions approving the restructuring plan (Ct. Rec. 1 at 31).  The members approved a name change of Old Yakima Chief and New Yakima Chief, thereby allowing New Yakima Chief to operate under the name formerly used by Old Yakima Chief.  *Id.*

On March 26, 2009, Plaintiffs received tax forms showing Old Yakima Chief income for 2008 that had been allocated to them, but not paid (Ct. Rec. 1 at 33).  Desserault and Hogue had a capital account balance of $1,559,123 and $915,992 respectively, on which they had the obligation to pay income tax.  *Id.*  In April, 2009, members of Old Yakima Chief approved a distribution to all members, including Plaintiffs, of an amount sufficient to enable each member to pay the 2008 taxes on the income that had been allocated to them (Ct. Rec. 1 at

ORDER GRANTING MOTION TO DISMISS ~ 6

34).  Additionally, Plaintiffs were invited to become members of Old Yakima Chief again.  *(Id)*.

Plaintiffs filed suit on June 5, 2009, alleging that the Control Group initiated a restructuring of Old Yakima Chief in order to penalize Plaintiffs, prevent them from participating in the management of Old Yakima Chief, and to diminish the fair value of their interest in Old Yakima Chief, all in violation of the Securities Act of 1934, and other contractual and fiduciary duties (Ct. Rec. 1.)

The pending issue before the Court is whether Plaintiffs have alleged facts sufficient to support this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Plaintiffs rely on their allegations of violations of the Securities Exchange Act of 1934 for federal question jurisdiction and rely on this Court's power of supplementary jurisdiction, pursuant to 28 U.S.C. § 1367(a), to support subject matter jurisdiction for Plaintiffs' pendent state-law claims.

## APPLICABLE LAW

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or

ORDER GRANTING MOTION TO DISMISS ~ 7

for the protection of investors." 15 U.S.C. § 78j(b).  SEC Rule 10b-5 was

promulgated under the Act and states in part:

> It shall be unlawful for any person, directly or indirectly, . . . [t]o
> make any untrue statement of a material fact or to omit to state a
> material fact necessary in order to make the statements made, in the
> light of the circumstances under which they were made, not
> misleading.

*Id.*  There are five essential elements of a Rule 10b-5 claim:

> In particular, a plaintiff must demonstrate (1) a material
> misrepresentation or omission of fact, (2) scienter, (3) a connection
> with the purchase or sale of a security, (4) transaction and loss
> causation, and (5) economic loss.

*Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009).  A

plaintiff must satisfy the pleading requirements of both Fed. R. Civ. P. 9(b) and the

requirements of the Private Securities Litigation Reform Act ("PSLRA") in order

to support claims alleged under section 10(b) and Rule 10b-5.  *Id.*    Since 1995,

plaintiffs must meet the heightened pleading requirements in securities fraud cases,

which require pleading "with particularity both falsity and scienter."  *Id.*

> Thus, to properly allege falsity, a securities fraud complaint must now
> specify each statement alleged to have been misleading, the reason or
> reasons why the statement is misleading, and, if an allegation
> regarding the statement or omission is made on information and
> belief, . . . state with particularity all facts on which that belief is
> formed. To adequately plead scienter, the complaint must now state
> with particularity facts giving rise to a strong inference that the
> defendant acted with the required state of mind.

ORDER GRANTING MOTION TO DISMISS ~ 8

*Id.* (citations omitted).

A court faced with a motion to dismiss a 10(b) claim for failure to properly plead scienter "must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true" and then determine whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007). "In determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id* To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco*, 552 F.3d at 991. Deliberate recklessness is defined as "intentional or knowing misconduct." *Id.* The *Zucco* court stated that "although facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness." *Id.*

## DISCUSSION

Defendants contend that Plaintiffs have failed to properly plead facts supporting a material misrepresentation or omission of fact, also referred to as

ORDER GRANTING MOTION TO DISMISS ~ 9

"falsity."  Under 15 U.S.C. §§ 78u-4(b)(1), the PSLRA requirements for falsity include:

> (1) Misleading statements and omissions
>> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>>> (A) made an untrue statement of a material fact; or
>>> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*Id.*

Defendants argue that Plaintiffs allege mere boilerplate conclusions from the statute such as "the Defendants made untrue statements and omitted . . . material facts in order to make the statements . . . not misleading" and fail to plead specific untrue statements or specific omissions of material facts (Ct. Rec. 45 at 8). Plaintiffs respond that their claims are predominately based upon omissions of material fact, rather than false statements, and that to be required to specify each statement misstates the requirements for a nondisclosure case under Rule 10b-5 since nondisclosure implies lack of such statements (Ct. Rec. 47 at 10).  Plaintiffs also claim that Defendants' state law violations of fiduciary duties can create a

ORDER GRANTING MOTION TO DISMISS ~ 10

cause of action for a Rule 10b-5 claim (Ct. Rec. 47 at 12). Specifically, members

in a member-managed limited liability company like Old Yakima Chief owe the

other members fiduciary duties analogous to those of general partners. (Ct. Rec.

47 at 10) (citing *Bishop of Victoria Corporation Sole v. Corporate Business Park,*

*LLC*, 138 Wn. App. 443 (2007); *Kidwell ex rel. Penfold v. Meikle.,* 597 F.2d 1273,

1292 (9th Cir. 1979)).

     Plaintiffs recap their allegations previously included in the complaint: that

because Plaintiffs ceased hops growing operations and refused to increase the

amount of the loan guarantees, Defendants Smith and Carpenter, with the

assistance of the other Control Group Defendants, contrived a fraudulent scheme to

expel Plaintiffs from Old Yakima Chief membership and to sell the stock of its

wholly owned operating subsidiary, Yakima Chief, Inc., to a new entity owned by

the Defendants (Ct. Rec. 47 at 14). Furthermore, Plaintiffs allege that Defendants

concealed their wrongful conduct from Plaintiffs by failing to give notice of the

change of Plaintiffs' status from full members to economic interest owners (Ct.

Rec. 1 at 25).

     Plaintiffs rely on out-of-circuit precedent in support of their arguments as

well as a pre-PSLRA  Ninth Circuit 1979 case: *Kidwell ex rel. Penfold v. Meikle.,*

597 F.2d 1273, 1292 (9th Cir. 1979)(stating, "there is room for Rule 10b-5 liability

. . . even when the only deceived parties are shareholders who are not entitled to

ORDER GRANTING MOTION TO DISMISS ~ 11

vote on the transaction in question, and even though there may be a breach of fiduciary duty under state law") (Ct. Rec. 47 at 11).

Plaintiffs' reliance on *Kidwell,* a pre-PLSRA case, is unfounded. *Kidwell* may outline a cause of action for pre-PSLRA minority shareholders who are not entitled to a vote when there is a breach of fiduciary duty under state law, however, the case does not address the post-PLSRA falsity pleading requirement. *See Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273, 1292 (9th Cir. 1979).

The Ninth Circuit analyzed the post PLSRA falsity pleading requirement in *In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005). In *Daou*, shareholder plaintiffs claimed that the defendants systematically reported revenue before it was earned in violation of generally accepted accounting principles. *Id.* at 1023. The court found that "plaintiffs must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position." *Id.* at 1018. The court acknowledged that plaintiffs met the heightened PSLRA pleading standard of falsity by alleging a "myriad observations of accounting misfeasance." *Id.*

In this case, Plaintiffs' allegations supporting a claim under the Securities Act of 1934, include that Defendants:  (a) made untrue statements of material fact and omitted to state material facts that were necessary in order to make the statements made by Defendants not misleading; (b) employed devices, schemes,

ORDER GRANTING MOTION TO DISMISS ~ 12

and artifices to defraud; and (c) engaged in acts, practices, and a course of conduct that operated as fraud and deceit (Ct. Rec. 1 at 36 and 38).

In contrast to the pleadings in *Daou*, Plaintiffs' allegations in this case are vague and generic without factual particularity as to actual falsity and without particularity for either untrue statements of material facts or omission of material facts that make statements misleading, as required by the PLSRA and *Tellabs*.

Under the PSLRA, "[t]o adequately plead scienter, the complaint must now state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Zucco v. Digimarc*, 552 F.3d 981, 990 (9th Cir. 2009)(quoting 15 U.S.C. § 78u-4(b)(2))(internal citations and quotations omitted). A "strong inference" is defined as an inference that "a reasonable person would deem . . . at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007); see also *Zucco*, 522 F.3d at 990.

To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *Zucco*, 552 F.3d at 991. Deliberate recklessness is defined as "intentional or knowing misconduct." *Id.* The plaintiff must plead a highly unreasonable omission beyond simple or even inexcusable negligence. *Id.* The omission must represent an extreme

ORDER GRANTING MOTION TO DISMISS ~ 13

departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. *Id.*

The court must conduct a dual inquiry: first, the traditional determination of whether any of plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; and second, a "holistic" review consistent with *Tellabs* considering whether all of the allegations considered together create a strong inference of intentional conduct or deliberate recklessness. *Id.* at 992.

In *Zucco*, for example, plaintiffs alleged that defendant, whose business centered on providing secure personal identification documents, purposefully manipulated its financial prospects by recording costs in increments over several financial statements when the costs should have been immediately recorded. *Id.* at 988. Plaintiffs' allegations of this deceit included providing statements of six confidential witnesses; corporate statements showing these accounting "errors"; resignations of defendant's employees in the auditing department; compensation packages of individual defendants; and stock sales. *Id.* at 993. Despite that particularity, the Ninth Circuit found that the "voluminous" allegations were inadequate to create an inference of scienter and affirmed the district court's dismissal of the complaint for failing to state a claim under the Securities Act of 1934. *Id.* at 1008.

ORDER GRANTING MOTION TO DISMISS ~ 14

In the pending case, Plaintiffs provide far less particularity in their allegations than the plaintiffs provided in *Zucco*. Defendants argue that Plaintiffs' allegations support the following inferences: (1) that Plaintiffs were converted to economic interest owners because they engaged in conduct adverse to the company when they refused to provide hops and to guarantee loans; and (2) that those Old Yakima Chief members who continued to grow hops formed New Yakima Chief and purchased Yakima Chief, Inc.'s stock to continue in the business of producing and marketing hops products, while allowing those who no longer grow hops to continue to earn money on their initial investment without exposing themselves to the risk of farming hops (Ct. Rec. 50 at 7). Defendants contend that none of those reasonable inferences support the conclusion that Defendants acted with "intentional or knowing misconduct."

Plaintiffs argue that Defendants failed to disclose material facts: specifically, Plaintiffs claim that Defendants failed to follow the requirements set forth in the operating agreement for (1) converting a member to an economic interest owner and (2) selling Yakima Chief, Inc. stock to New Yakima Chief (Ct. Rec. 69 at 2). Plaintiffs allege that because of Defendants' actions that Plaintiffs lost the opportunity to participate in the decision making process and were not allowed to vote. (*Id.*) Further, Plaintiffs argue that neither the operating agreement, nor any other agreement, requires members to provide hops to Old

ORDER GRANTING MOTION TO DISMISS ~ 15

Yakima Chief or to guarantee loans. (*Id.*)  Finally, Plaintiffs allege that other members of Old Yakima Chief were not hops growers and did not guarantee debt. (*Id.*)

Viewing Plaintiffs' factual allegations as true, the Court finds that Plaintiffs' allegations that Defendants' conversion of Plaintiffs' membership into economic interest owners without prior notice to Plaintiffs does not rise to the level of "extreme departure from the standards of ordinary care," as required by *Zucco*.[4] *Zucco v. Digimarc,* 552 F.3d 981, 991 (9th Cir. 2009).  If simple allegations were sufficient, "virtually every company in the United States that experienced a downturn could be forced to defend securities fraud actions." *Zucco at 1005.*

The Court finds that Plaintiffs' allegations support a reasonable inference that Defendants viewed Plaintiffs' refusal to grow hops and to guarantee loans as

---

[4] In fact, it is not clear that Defendants' actions of converting Plaintiffs' interests into "economic interests" is a violation of Old Yakima Chief's operating agreement, because the operating agreement allows conversion of a member's status to "economic interest owner" on a determination that the member has been guilty of wrongful conduct that has adversely affected the company, or has otherwise breached a duty owed to the company or to the other members (Ct. Rec. 1.)

ORDER GRANTING MOTION TO DISMISS ~ 16

"wrongful conduct that materially affected Old Yakima Chief" and justified converting Plaintiffs' status from members to economic interest owners. Plaintiffs' allegations of those facts alone fail to support the "strong inference" that Defendants acted with the scienter required by *Zucco*. 552 F.3d at 991. Defendants' actions do not rise to the level of an "extreme departure of ordinary care." *See Zucco v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009).

The Court finds that Plaintiffs' second set of allegations to support scienter regarding the sale of Yakima Chief, Inc. stock to New Yakima Chief again fails to meet the heightened pleading standards of the PSLRA. It is reasonable to infer that those Old Yakima Chief members who continued to grow hops formed New Yakima Chief and purchased Yakima Chief, Inc.'s stock to continue in the business of producing and marketing hops products. Even applying a holistic review of the allegations as required by *Zucco*, the Court finds that Plaintiffs' allegations do not meet the heightened scienter pleading standard of the PSLRA.

Plaintiffs contend that the allegations in the complaint also support standing under the Securities Act of 1934, because of Defendants' alleged "forced sale" of Plaintiffs' stock by converting Plaintiffs' status from members to economic interest owners (Ct. Rec. 47 at 2).

ORDER GRANTING MOTION TO DISMISS ~ 17

Plaintiffs argue that:

> [t]he forced sale doctrine relaxes the requirement that only traditional purchasers or sellers of securities have standing to bring a Section 10(b) claim. A shareholder who is forced to sell or alter her securities as the result of a fraudulent scheme is deemed a seller for purposes of the securities laws.

*Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1498 (9th Cir. 1995). Plaintiffs contend that the substantial change of the character of a shareholder's investment is equivalent to a forced sale. *See Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1518 (9th Cir. 1986).

Defendants argue that Plaintiffs do not meet the forced sale standing requirement, because the conversion of Plaintiffs' interests from voting members of Old Yakima Chief to economic interest owners was not a "substantial change" sufficient to support standing under the Securities Act of 1934  (Ct. Rec. 50 at 14).

The Ninth Circuit narrowly construed and rarely applied the forced sale doctrine before the enactment of the PLSRA's heightened pleading standard. (*Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1499 (9th Cir. 1995) ("the forced sale doctrine does not cut a wide swath . . .  we have rarely encountered instances where it applies."); *Stitt v. Williams*, 919 F.2d 516, 524-25 (9th Cir. 1990) (recognizing the existence of the forced seller exception to the purchaser-seller requirement but refusing to apply it based on the facts of the case); *Sec. Investor Prot. Corp.*, 803 F.2d 1513 (9th Cir. 1986) (holding that the forced seller exception

ORDER GRANTING MOTION TO DISMISS ~ 18

is an exception to the purchaser seller requirement under section 10(b) and Rule 10b-5 but declining to apply it based on the facts before the court); *Shivers v. Amerco*, 670 F.2d 826, 830-31 (9th Cir. 1982) (noting the existence of the forced seller exception but holding that the plaintiffs were not forced sellers for purposes of standing under section 10(b) and Rule 10b-5)).

The Ninth Circuit case that is most analogous to the current case is *Shivers v. Amerco*, 670 F.2d 826 (9th Cir. 1982). In *Shivers*, defendants owned approximately 94% of Amerco's stock. *Id.* Most minority shareholders were U-Haul employees who traded the stock at approximately 120% to 130% of the book value. *Id.* at 828. At some point, the defendants decided to destroy the informal market in order to buy back minority shareholders' stock at 50% of its book value. *Id.* The *Shivers* court found that plaintiffs lacked standing under the "forced sale" doctrine because they were not forced to sell their stock at the reduced rate. *Id.* at 830-31.

The Court finds that the Plaintiffs in this case, like the plaintiffs in *Shivers*, still hold their stock because they were not forced to sell or exchange their interests in Old Yakima Chief for cash (Ct. Rec. 50 at 16). Even if the Court applies the forced sale doctrine analysis to this case, the Court finds that Plaintiffs fail to allege facts sufficient to support standing under the Securities Act of 1934.

ORDER GRANTING MOTION TO DISMISS ~ 19

Therefore, the Court finds that Plaintiffs have failed to allege sufficient facts as required by PLSRA, *Tellabs,* and *Zucco,* to support a cause of action under the Securities Act of 1934. In view of the Court's findings that Plaintiffs lack standing, the Court will not address Defendants' allegations that Plaintiffs also relied on "group pleading" in the Complaint. Without sufficient pleading to support Plaintiffs' securities fraud claims, this Court lacks subject matter jurisdiction and declines to assert jurisdiction over the supplemental state law claims.

Accordingly,

1. Defendants' Motion to Dismiss **(Ct. Rec. 43)** is **GRANTED**;

2. The Court declines to assert supplemental jurisdiction over the state law claims, and therefore, Plaintiffs' Complaint, **(Ct. Rec. 1) is DISMISSED WITHOUT PREJUDICE**.

3. All pending motions on the docket are **DENIED AS MOOT.**

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this 3rd day of June, 2010.

s/ *Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Court Judge

ORDER GRANTING MOTION TO DISMISS ~ 20